STATE OF NEBRASKA, APPELLEE, v. ROY E. COOK, APPELLANT.

157 N. W. 2d 151

Filed March 8, 1968. No. 36544.

Roy E. Cook, Adolph Q. Wolf, Richard J. Bruckner, Michael McCormack, and Fred J. Montag, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a companion case to State v. Watson, *post* p. 692, 157 N. W. 2d 156, and State v. Perez, *ante* p. 680, 157 N. W. 2d 162. Defendant Cook was tried jointly with Perez, and was convicted on both counts of burglary and the possession of burglary tools and sentenced thereon. He now appeals. We affirm the judgment and sentence of the district court.

The defendant's main contention is that his arrest was illegal and that therefore the tools and other items of equipment in the evidence secured as a result thereof are inadmissible. Most of the pertinent facts in this respect are recited in State v. Watson, *supra*, and State v. Perez, *supra*, and will not be repeated here. Perez and Watson were arrested after they were observed changing directions, walking rapidly, and dropping or depositing some tools in the weeds or grass nearby. Two crow bars, a screw driver, and a flashlight were discovered as a result of this arrest. These actions, and others, recited in the companion opinions, were ample grounds for the establishment of probable cause and the arrest of Watson and Perez. But the police officers then, and we believe reasonably so, made observations and conducted searches in the near vicinity of these two arrests. The defendant was observed nearby sitting in an automobile with out-of-state license plates and reading a newspaper at 5 o'clock in the morning on the day before Memorial Day. The police officer approached the car and observed through the window of the automobile the handle of a screw driver and what appeared to be a pry bar sticking out underneath a pillow on the passenger side of the front seat. On inquiry the defendant gave his name and explained that he was reading a want-ad section of the newspaper because he was looking for a job. The time was 5 o'clock on a Sunday morning and the following day was Memorial Day. The defendant accompanied the police officer to the area where Perez and Watson were being held. As they reached the area, Perez said, "So they got you, too." At this point the defendant was arrested.

It seems to us almost self-evident that the officers had reasonable grounds to believe that a crime had been committed and that the defendant's presence in the near vicinity under the circumstances described, together with their observation of the tools inside the car in which he was sitting, and the subsequent statement by Perez

to Cook in the officers' presence furnished ample grounds for probable cause for the arrest of Cook. The evidence further, when considered as a whole, establishes probable cause that Perez, Watson, and the defendant Cook were engaged in a conspiracy to commit the crimes that they were charged with. As we have mentioned, each case must be decided upon its own particular facts and circumstances in order to determine the existence of probable cause. The facts in the present case are much stronger than those in State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129. In that case, which is in many respects parallel to the present one, this court said as follows: "The existence of probable cause must be determined by a practical and not by any technical standard. The sight of what appeared to be burglary tools in the car, under the circumstances, was at the very least an exceptional circumstance, and was justification for investigation. By doing as they did, the officers were giving the defendant a chance to exculpate himself if no cause for arrest existed. The defendant was requested to drive to the police station where his companion was identified as a known burglar. This, in the light of the other circumstances, was sufficient for any police officer of reasonable caution to believe probable cause existed for an arrest for the possession of burglary tools. The arrest was then made." In the present case the police officers already had probable cause to think that the crime of possessing burglary tools had been committed, they were reasonably searching in the near vicinity for further evidence, tools suitable for burglary purposes were observed in the defendant's car, and he gave an improbable explanation of the circumstances under which he was found. The defendant's arrest was legal and there is no merit to his contentions.

No question is raised in this case as to the sufficiency of the evidence to support the conviction and will not be further discussed herein.

Defendant Cook next argues that the trial court should

have ordered a severance of trial and that he was prejudiced by being tried with Perez. The record does not show that the defendant either before or during the trial made an appropriate motion for severance. The first appearance of defendant's motion is after both the State and the defendant had rested their cases. Nor does the record disclose any attempt on the part of the defendant during the trial to establish any prejudicial effect which could result from the joint trial. This was obviously too late. To permit a defendant to proceed to trial without making a motion for severance and to take his chances on a favorable result in the absence of extraordinary circumstances or surprise would permit a defendant to defeat the orderly processes of justice and defeat the expeditious and constitutional purpose embodied in our severance statute, section 29-2002, R. R. S. 1943. Even under our old statute, which was amended in 1957, persons who were charged jointly with the commission of a felony were entitled to separate trials as a matter of right if a timely application was made to the court for that purpose. Under our present statute, section 29-2002, R. R. S. 1943, amended in 1957, jointly charged defendants are not entitled to a separate trial as a matter of right but are entitled to a separate trial if it appears that the defendant or the State would be prejudiced by the joining of the offenses or the defendants in a joint trial. The proper rule is stated in State v. Brown, 174 Neb. 387, 118 N. W. 2d 328, wherein the court said: "The right to a separate trial now depends upon a showing that prejudice will result from a joint trial. A motion for a separate trial is addressed to the sound discretion of the trial court, and its ruling on such a motion will not be disturbed in the absence of a showing of an abuse of discretion. Opper v. United States, 348 U. S. 84, 75 S. Ct. 158, 99 L. Ed. 101, 45 A. L. R. 2d 1308; 53 Am. Jur., Trial, § 56, p. 65; 23 C. J. S., Criminal Law, § 933, p. 696.

"The fact that one of several defendants had made an admission which may be received in evidence against him

is not a conclusive ground for ordering the defendants tried separately even though the admission incriminates the other defendants. United States v. Caron, 266 F. 2d 49; Costello v. United States, 255 F. 389. There is some danger of prejudice in any trial involving multiple defendants but severance should be denied in the absence of a showing of prejudice against which the trial court will not be able to afford protection. United States v. Lev, 22 F. R. D. 490, 276 F. 2d 605. The record in this case does not establish that the trial court abused its discretion in overruling the motion of the defendants for separate trials."

In the case at bar no motion for separate trial was made prior to the trial or during the trial until after all of the evidence was introduced. No showing was made to the trial court or contention made that there was any prejudice. Further, the evidence and the instructions reveal that the trial court carefully protected the rights of the individual defendants. There is an absence of a showing of an abuse of discretion and this contention is without merit.

Defendant objects to the introduction of evidence of statements and admissions made by the defendant to police officer Chamberlin while in custody at the police station after his arrest. These statements were elicited under substantially the same circumstances as those of Perez. See State v. Perez, *supra.* The defendant advised the police officer that he knew all of his rights and then, after a partial warning, proceeded to give the statements and admissions in question. However, it is not necessary to reach the issue presented in the Perez case. The defendant at trial failed to object to the statements and admissions of this evidence on the ground of voluntariness, or on the ground that he had been illegally arrested, or on the ground that he had not been properly advised of his constitutional rights. Both he personally and his trial counsel stated to the court that they wanted these statements to go to the jury, and that

they did not want the trial court to reach any preliminary determinations of voluntariness. The record reveals that the counsel for the defendant stipulated in open court that these statements now challenged be admitted into evidence. The record reveals extraordinary precautions on the part of the trial court to assure that there was a knowing and intelligent waiver of any objections to the admissibility of these statements. After defendant's counsel made the statement that he had no objection to the introduction of this testimony, the record reveals that he made this decision after consultation with the defendant. The record reveals the following colloquy between defendant and his counsel in front of the bench: "MR. McCORMACK: Do you want to come up here for a minute? (Mr. Cook approached the bench) MR. McCORMACK: Mr. Cook, you and I have conferred and you agree with my decision to waive the voluntariness of these statements and have them go to the jury? DEFENDANT COOK: Yes." After this transpired the trial recessed until the following Monday, and then the following occurred in open court: "THE COURT: Do you want your client up here to make a record? MR. McCORMACK: Yes. Mr. Cook, come up here, please. (Defendant Cook approached the bench) MR. McCORMACK: Mr. Cook, just for the record, you agree with me that you and I have consulted and have agreed that we would like the statement given to Officer Chamberlin to be read to the jury with the qualification that there be no mention of penitentiary or con or anything referring to your past record, is that correct? DEFENDANT COOK: Yes, Sir. And there is a footnote on that there, that was not testified to by him the other day about at a later date after I sat and thought it over I might talk to him some more, I never—." The statements introduced in evidence were almost entirely exculpatory in nature which, of course, makes the position taken by the defendant and his counsel understandable. Subsequent to the above proceedings the stipulation was en-

tered into by which the now challenged statements were admitted into evidence. It follows, therefore, that not only was there no objection to this evidence but that there was a wholly voluntary and intelligent waiver in open court, and a desire on the part of the defendant that the statements and evidence challenged be admitted into evidence. There is no merit to this contention. See, State v. Homan, 180 Neb. 7, 141 N. W. 2d 30; State v. Bundy, 181 Neb. 160, 147 N. W. 2d 500.

The defendant complains of the court giving an instruction in which he advised the jury that the defendant was not legally required to testify, that his failure to do so could not be considered by the jury in any manner, and that the jury was not to draw any inference from or speculate on his failure to testify. We have examined this instruction and it correctly states the law. Ferguson v. State, 52 Neb. 432, 72 N. W. 590, 66 Am. S. R. 512; United States v. Heithaus, 377 F. 2d 484; State v. Boscia, 93 N. J. Super. 586, 226 A. 2d 643; Blakely v. State, 43 Ala. App. 654, 198 So. 2d 803. No authority is cited by the defendant for his position with reference to this instruction and we can find none. The instruction was not a comment on the defendant's failure to testify. His failure to be sworn and testify, of course, at the trial was obvious and the jury could not help but be aware of it. Under these circumstances the admonitions by the court that it was not to consider this fact against him and that the law does not require that he take the stand was not only a proper instruction but was commendable as properly protecting the defendant's rights in this situation. See Blakely v. State, *supra.* We have carefully reviewed the record and the evidence in this case. It reveals that there was ample evidence to sustain the conviction and that each defendant's rights were carefully protected at every stage of the proceeding. It may be and should be said that the trial court carefully and conscientiously tried this case and we can find no prejudicial error. The

judgment and sentence of the district court are correct and are affirmed.

AFFIRMED.