STATE OF NEBRASKA, APPELLEE, v. OCTAVIANO JOSEPH PEREZ, APPELLANT.

157 N. W. 2d 162

Filed March 8, 1968. No. 36531.

J. William Gallup and Richard J. Bruckner, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is a companion case to State v. Watson, reported *post* p. 692, 157 N. W. 2d 156, and State v. Cook, reported *post* p. 684, 157 N. W. 2d 151. Here Perez was tried jointly with Cook for the possession of burglary tools and burglary. Upon a jury verdict of guilty of both offenses, he was sentenced to a total of 5 years' imprisonment. He appeals. We affirm the judgment and sentence of the district court.

Perez says his arrest was illegal. We will not burden this opinion with a further description of the minutiae of the evidence. The essential facts are recited in State v. Watson, *supra*. The arrest of Perez was legal, and the flashlight, unrusted pry bars, and tools which Perez stooped and deposited in the bent-over grass were admissible. State v. Watson, *supra*. As to the armory of tools observed and found in the Missouri car close by, in which Cook was reading a newspaper looking for a "job" at 5 a.m. on the Sunday before Memorial Day, Perez eliminated any speculative doubt as to the conspiracy and their admissibility when he told Cook at the scene, "So they got you, too."

In the successively filed briefs on these cases, all counsel, in a point-counterpoint argument commensurate with the increasing depth of their search, wax the length of their argument into a comprehensive review of all the recent cases involving illegal arrest and search and seizure. By an ingenious method of subdividing the facts and then color matching similar facts in other cases, the unity and cohesive meaning of the circumstances are destroyed. Walking on the street, changing course suddenly, depositing tools, reading a newspaper at 5 a.m. in a car with Missouri license plates, etc., may be innocent acts in themselves, but tied together they may form a series of events which, in the frame of refrences of human experience, forge a chain of criminal purpose. Such a combination was present here. We refuse to analyze the facts of these cases in terms of separate

logic tight compartments. There was probable cause for the arrest in this case prior to the detention and the detention was legal under the statute (section 29-829, R. S. Supp., 1965), and therefore the information secured as the result of the legal detention further established probable cause for the arrest. Each case must be decided on its own facts but the evidence in this case overwhelmingly establishes probable cause for Perez' arrest. State v. Huffman, 181 Neb. 356, 148 N. W. 2d 321; State v. Carpenter, 181 Neb. 639, 150 N. W. 2d 129; State v. O'Kelly, 175 Neb. 798, 124 N. W. 2d 211; Ker v. California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726; § 29-829, R. S. Supp., 1965. Perez says the evidence was insufficient to sustain the conviction. On the possession of burglary tools charge, it was sufficient. State v. Watson, *supra*. The evidence is stronger here because Perez deposited the tools in the weeds and also told Cook, "So they got you, too."

As to the burglary charge, defendant had in his possession a key to room 3 of the Eddington Hotel, admitted he had registered at the hotel on the day previous to his arrest under the name of Quiroz, and the room had been rented to no one subsequently. In the room were found many items (including a container of drugs and a money bag), identical to those taken in the burglary. It is not disputed that the Kubat Center Street Pharmacy was burglarized. And then we have the exclamation of Perez to Cook, "So they got you, too," together with the other evidence as to burglary tools. The evidence establishes recent unexplained possession and other incriminating circumstances amply sufficient to support a conviction. State v. Solano, 181 Neb. 716, 150 N. W. 2d 585; State v. Ohler, 178 Neb. 596, 134 N. W. 2d 265; Phillips v. State, 157 Neb. 419, 59 N. W. 2d 598, 58 A. L. R. 2d 1141.

Defendant Perez assigns as error the admission into evidence of certain inculpatory and exculpatory statements given to police officer Putnam at the police station subsequent to his arrest. Prior to the giving of the oral

admission or statements the following colloquy took place between officer Putnam and defendant: "A. Immediately on determining the correct spelling of his name and his address I advised him that he had certain rights under the Constitution of the United States and the State of Nebraska; that he did not have to make any statement to me if he did not want to and that if he did the statement could be used against him in court, and about this time—well, I was starting to tell him that he had the right to consult an attorney prior to talking to me if he wished and about this time he cut me off, saying, *'You don't have to advise me of my rights, I know more about them than you. I have been picked up and advised many times before.'*" (Emphasis supplied.)

It is now insisted, under the holding in Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, even though the basic warnings were given, that the failure to advise of the right to counsel to be present during interrogation renders the admissions and statements inadmissible. This position is taken despite the undenied refusal of defendant to listen to any further advice or warnings from the police officer.

The basic question, under the Miranda holding, is whether the defendant, knowing his rights, voluntarily and intelligently waived them. This, as the cases indicate, depends on the circumstances of the particular case. We feel, as the trial court did, that the defendant made the statements with full knowledge of his rights under the Miranda holding. Not only was the effect of his statement to refuse to be further advised, but he expressly gave as the reason that he already knew them because he had been advised of them many times before. Perez, by his own admission, was a man of extensive college education, specializing in chemistry, and claimed the equivalent of a degree (short 3 credit hours). The evidence establishes without dispute that no coercion, physical or psychological, was practiced on the defendant. The statements made were completely voluntary in na-

ture and most of them were exculpatory in nature. The defendant Perez testified at the hearing on admissibility, outside the presence of the jury, after police officer Putnam had testified. He never denied that he knew he was entitled to a lawyer and his own evidence is conclusive that he knew he was entitled to a lawyer from the time of his arrest. The qualified statement of Putnam, recited above, lends support to its truth. A calculated fabrication would not lend itself to the admission of failure to give the requisite warnings. A police officer is not required to give a ritualistic warning of a right the defendant already knew of and which he refused to hear the repetition of. Both the trial court and the jury (under a comprehensive instruction covering the Miranda requirements) found that the defendant knowingly and intelligently waived his rights and thereafter gave voluntary statements, both inculpatory and exculpatory. The evidence not only supports these findings, but it would be difficult to come to any other conclusion. There is no merit to this contention.

We have examined the objections to the admissibility of two photographs of various items found in the defendant's hotel room (room 3, Eddington Hotel), and find them to be without merit.

The judgment and sentence of the district court are correct and are affirmed.

AFFIRMED.